(No. 70875.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. P.H., a Minor, Appellee.

*Opinion filed October 31, 1991.*

210

MILLER, C.J., joined by CUNNINGHAM, J., specially concurring.

Roland Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb and Howard D. Weisman, Assistant State's Attorneys, of counsel), for the People.

Randolph N. Stone, Public Defender, of Chicago (Tina Liebling, Assistant Public Defender, of counsel), for appellee.

Theodore Gottfried, State Appellate Defender, and Elizabeth Clark, both of the Office of the State Appellate Defender, of Chicago, and Michael B. Metnick, of Metnick, Barewin & Wise, of Springfield, for *amici curiae* Office of the State Appellate Defender *et al.*

JUSTICE FREEMAN delivered the opinion of the court:

Defendant, P.H., a minor, was arrested and charged with two counts of attempted first degree murder, two counts of aggravated battery, two counts of aggravated battery with a firearm and one count of armed violence. (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4(a), 12—4(b)(1), 12—4.2(a), 33A—2.) Pursuant to the "gang-transfer" provision (Ill. Rev. Stat. 1989, ch. 37, par. 805—4(3.1)) of the Juvenile Court Act of 1987 (the Act) (Ill. Rev. Stat. 1989, ch. 37, par. 801—1 *et seq.*), the State filed a motion to permit prosecution of defendant under the criminal laws.

The circuit court of Cook County denied the State's motion and, finding that the "gang-transfer" provision contradicted the "discretionary-transfer" provision of the Act (Ill. Rev. Stat. 1989, ch. 37, pars. 805—4(3)(a), (3)(b)), held the provision unconstitutional as violative of separation of powers. The State moved to stay the court's order (134 Ill. 2d R. 609(c)), pending this direct appeal to this court (134 Ill. 2d R. 603). The State Appellate Defender and the Illinois Attorneys for Criminal Justice filed an *amicus curiae* brief on behalf of defendant. 134 Ill. 2d R. 345(a).

The singular issue presented for review is whether the trial court erred in finding the "gang-transfer" pro-

vision unconstitutional. We answer the inquiry in the affirmative and, therefore, we reverse.

Section 5—4(3.1), the "gang-transfer" provision of the Juvenile Court Act, provides:

> "If a petition alleges commission by a minor 15 years of age or older of an act which constitutes a forcible felony under the laws of this State, and if a motion by the State's Attorney to prosecute such minor under the criminal laws of Illinois for such alleged forcible felony alleges that: a) such minor has previously been adjudicated delinquent for commission of an act which constitutes a felony under the laws of this State or any other state; and b) the act which constitutes the offense was committed in furtherance of criminal activity by an organized gang, the Juvenile Judge, designated to hear and determine such motions shall, upon determining that both allegations are true, enter an order permitting prosecution under the criminal laws of Illinois." (Ill. Rev. Stat. 1989, ch. 37, par. 805—4(3.1).)

Defendant asserts that the "gang-transfer" provision is unconstitutional as violative of the separation of powers clause of the Illinois Constitution (Ill. Const. 1970, art. II, §1), and the double jeopardy, due process and equal protection clauses of the Illinois and Federal Constitutions (Ill. Const. 1970, art. I, §§10, 2; U.S. Const., amends. V, XIV). As an additional challenge, *amici* urge that the definition of "organized gang," as provided in the statute, is unconstitutionally vague and, further, that the "gang-transfer" provision is violative of procedural due process. Ill. Const. 1970, art. I, §2; U.S. Const., amend. XIV.

## RIPENESS

The State asserts that this court's review should be limited to whether the statute violates separation of powers. It maintains that since there has been no transfer, no trial and no sentence imposed, our consideration

of defendant's other alleged constitutional infirmities is premature. We disagree.

A controversy is ripe when it has reached the point where the facts permit an intelligent and useful decision to be made. (*People v. Ziltz* (1983), 98 Ill. 2d 38.) In *Ziltz*, the defendant was charged with violating the Illinois Vehicle Code. The defendant filed a motion to dismiss one of the counts against her on the basis that the Code was unconstitutional. The trial court granted the defendant's motion and the State appealed.

On direct appeal to this court, the State argued that the challenge to the statute was premature and that damages were too speculative to adjudicate at that time. We noted there that the defendant had been arrested and charged with an offense; the facts had been presented to this court; and there was no need to speculate as to the harm the defendant would suffer if convicted. We therefore concluded that the case was ripe for judicial determination. Likewise, we conclude that the issues raised by defendant here are ripe for our determination.

## STANDING

Intertwined with the State's ripeness argument is the issue of whether defendant has standing to raise issues of double jeopardy, equal protection and due process. The State correctly asserts, relying on *People v. Rogers* (1989), 133 Ill. 2d 1, that a court will limit its inquiry into the constitutionality of a statute to the extent required by the case before it, and will not formulate a rule broader than that necessitated by the precise situation in question. The State points out that the trial court declared the "gang-transfer" provision unconstitutional based upon separation of powers. Therefore, the State admonishes, for this court to consider defendant's other constitutional challenges requires us to act in contraven-

tion of established principles of constitutional law. We disagree.

A party may question the constitutional validity of a statutory provision if he or she has sustained or *is in immediate danger of sustaining* some direct injury as a result of enforcement of the statute. (*People v. Esposito* (1988), 121 Ill. 2d 491, 512; see also *Cramp v. Board of Public Instruction* (1961), 368 U.S. 278, 7 L. Ed. 2d 285, 82 S. Ct. 275.) Unquestionably, defendant is in immediate danger of sustaining harm by enforcement of the allegedly unconstitutional provision. Application of the "gang-transfer" provision to him could result in criminal prosecution with all of its inherent stigmas. Therefore, even absent a transfer, trial, or sentencing, we conclude that defendant has standing. See *People v. Watson* (1987), 118 Ill. 2d 62, 65-66; *People v. Mayberry* (1976), 63 Ill. 2d 1, 8.

Finally, the State points out that the trial court did not rule that the statute was violative of the double jeopardy clause, equal protection or due process. Therefore, it maintains that those issues are not properly before us. Again, we must disagree.

The reasons assigned by the trial court for its judgment are immaterial if the decision is correct. Therefore, although the scope of review for an appellant is limited by his assignment of errors, an appellee is not so restricted. An appellee may raise any argument or basis supported by the record to show the correctness of the judgment, even though he had not previously advanced such an argument. *In re Estate of Leichtenberg* (1956), 7 Ill. 2d 545, 549; *Hoffman v. Nustra* (1986), 143 Ill. App. 3d 259, 265; see also *People ex rel. Jendrick v. Allman* (1947), 396 Ill. 35, 37.

## STANDARD OF REVIEW

There is a basic presumption that all statutes are con-

stitutional (*People v. Bales* (1985), 108 Ill. 2d 182, 188), and the party challenging a statute bears the burden of establishing its invalidity (*People v. Felella* (1989), 131 Ill. 2d 525, 539). Our duty, if it can reasonably be done, is to construe enactments so as to sustain their constitutionality and validity. (*People v. Davis* (1982), 93 Ill. 2d 155, 161.) Where their meaning is doubtful, that doubt will be decided in favor of the validity of the law challenged. (*Davis*, 93 Ill. 2d at 161.) However, it is equally our duty to declare invalid an unconstitutional statute, no matter how desirable or beneficial the attempted legislation may be.

## JUVENILE COURT JURISDICTION

The State argues, at length, that the legislature has the power to determine the age limit for juvenile court jurisdiction (*People v. M.A.* (1988), 124 Ill. 2d 135; *People v. J.S.* (1984), 103 Ill. 2d 395). Defendant, noting that the "gang-transfer" provision affects minors already within the court's jurisdiction, concedes this issue. Accordingly, we give the issue no consideration.

## SEPARATION OF POWERS

Defendant first contends that the statute violates the separation of powers provision because it is an infringement on the court's power to "adjudge, determine and render a judgment." (*Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 150.) He maintains that the court, after "hearing the evidence and making extensive findings of fact," must relinquish jurisdiction over the minor. This, defendant maintains, deprives the court of the jurisdiction vested in it by the Illinois Constitution.

Preliminarily, we note that the Illinois Constitution provides that all circuit courts have original jurisdiction over all justiciable matters except where the supreme court is specified to have original and exclusive jurisdic-

tion. (Ill. Const. 1970, art. VI, §9.) We have previously held that the juvenile court is merely a division of a single unified circuit court. (*People v. DeJesus* (1989), 127 Ill. 2d 486, 498; *In re Greene* (1979), 76 Ill. 2d 204, 213; *People v. Jiles* (1969), 43 Ill. 2d 145, 147; see Ill. Rev. Stat. 1989, ch. 37, par. 801—3(5); see also *Lindsay v. Lindsay* (1913), 257 Ill. 329, 333-34.) It is the circuit court, as a whole, which is vested with jurisdiction. *People v. Nichols* (1978), 60 Ill. App. 3d 919, 922; *People v. Shaw* (1972), 3 Ill. App. 3d 1096, 1100.

Whether a person is tried in juvenile or criminal court is a matter of procedure rather than jurisdiction. (*DeJesus*, 127 Ill. 2d at 498, citing *People v. Green* (1982), 104 Ill. App. 3d 278, 281.) We note that a petition for adjudication of wardship is filed in the juvenile court division of the circuit court. The "gang-transfer" provision merely, therefore, removes a case from the judge sitting in the juvenile division of the circuit court to a judge sitting in the criminal division. There is no divestiture of jurisdiction. The circuit court retains jurisdiction over the minor. We further note, parenthetically, that statutory provisions governing procedure are not uncommon. See *Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 61.

Having determined that the provision does not present jurisdictional problems, we must next consider whether it creates an undue infringement on the powers of the judiciary. The Illinois Constitution provides that the legislative, executive and judicial branches of government are separate and that "[n]o branch shall exercise powers properly belonging to another." (Ill. Const. 1970, art. II, §1.) Though judicial power is vested in the courts (Ill. Const. 1970, art. VI, §1), the separation of powers provision does not create rigid boundaries prohibiting every exercise of functions by one branch of government which ordinarily are exercised by another (*City of Waukegan v. Pollution Control Board* (1974), 57 Ill. 2d

170, 174-75; accord *People v. Walker* (1988), 119 Ill. 2d 465, 473-74; *People v. Farr* (1976), 63 Ill. 2d 209, 213). Thus, we have consistently recognized that the legislature, which is vested with the power to enact laws, may also enact legislation which governs judicial practices, as long as it does not *unduly* infringe upon the powers of the court. *People v. Bainter* (1989), 126 Ill. 2d 292, 303; *Walker*, 119 Ill. 2d at 474; *People v. Taylor* (1984), 102 Ill. 2d 201, 207; *People v. Youngbey* (1980), 82 Ill. 2d 556, 560.

We do not believe that the "gang-transfer" provision is an infringement upon the inherent powers of the judiciary. In so concluding, we are mindful that juveniles have neither a common law nor a constitutional right to adjudication under the Juvenile Court Act. (*People v. M.A.* (1988), 124 Ill. 2d 135.) The Act is a purely statutory creature whose parameters and application are defined solely by the legislature.

Contrary to defendant's contention, the "gang-transfer" provision does not abrogate the court's duty to adjudicate the case before it. Instead, it requires the court to determine whether the protections of the Act shall apply. The circuit court, albeit a different division, retains the power to adjudicate, apply the law and render a final determination. By enacting the provision, the legislature has merely redefined the parameters for applicability of the Act. See *People v. J.S.* (1984), 103 Ill. 2d 395; *People ex rel. Carey v. Chrastka* (1980), 83 Ill. 2d 67.

Our conclusion that there is no infringement is bolstered by this court's decision in *Strukoff v. Strukoff* (1979), 76 Ill. 2d 53. In *Strukoff* the validity of section 403(e) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 403(e)), which mandated a bifurcated hearing procedure, was challenged as violative of separation of powers. This court held that there was no trespass upon judicial authority

because divorce proceedings are wholly statutory in origin, and the provision was designed to define and implement a statutorily created remedy. *Strukoff*, 76 Ill. 2d at 60-62. See also *Walker*, 119 Ill. 2d at 478-79.

Likewise, the procedures under the Juvenile Court Act are purely statutory in origin. The "gang-transfer" provision was designed by the legislature to further define that procedure.

## DOUBLE JEOPARDY

Defendant next contends that the "gang-transfer" provision violates the double jeopardy provisions of the United States and Illinois Constitutions. He maintains that since the transfer hearing is concerned with the truth of the "charges," it is similar to an adjudicatory hearing. He concludes, with reliance on *Breed v. Jones* (1975), 421 U.S. 519, 44 L. Ed. 2d 346, 95 S. Ct. 1779, that the "gang-transfer" provision violates double jeopardy. Defendant's argument is based on a faulty premise.

We begin our analysis with a statement of established principles regarding double jeopardy. Criminal defendants are protected against being twice put in jeopardy of life or limb for the same offense. (U.S. Const., amend. V; Ill. Const. 1970, art. I, §10.) "[P]rotections against double jeopardy are triggered only after an individual has been subjected to the hazards of trial and possible conviction." (*People v. Shields* (1979), 76 Ill. 2d 543, 546.) As we have stated in the past, "[t]he concept of 'jeopardy' *** requires that the accused be on trial for the offense charged; that is, that he be present at a judicial proceeding aimed at reaching a final determination of his guilt or innocence of the offense charged." *People v. Chatman* (1967), 38 Ill. 2d 265, 270; see also *People v. Laws* (1963), 29 Ill. 2d 221, 224.

The linchpin of defendant's argument is that the "gang-transfer" hearing is tantamount to an adjudica-

tory hearing. Defendant first points out that the juvenile court in *Breed* found that the allegations in the delinquency petition were true and that the standard of proof to sustain the allegations was beyond a reasonable doubt. Therefore, defendant reasons that since the "gang-transfer" provision requires that the juvenile court judge determine that the allegations in the motion are "true," the standard of proof for transfer is also beyond a reasonable doubt.

We find no authority to support such a conclusion and reject the assertion as being supported by *Breed*. The reasonable doubt standard in *Breed* applied to proof of the allegations of delinquency in the petition, not to the decision for transfer.

As further support for his reasonable doubt theory, defendant maintains that since the Act expressly allows the use of hearsay evidence at "discretionary transfer" and dispositional hearings, but is silent as to the caliber of evidence admissible at "gang-transfer" hearings, only "trial-admissible" evidence may be used.

We are not persuaded that the standard of proof at this stage of the proceedings is reasonable doubt. The legislature has not yet spoken on what standard of proof is required for transfer under the "gang-transfer" provision. However, contrary to defendant's belief, we do not interpret the absence of an express standard of proof as requiring a reasonable doubt standard. We believe it to be a more reasonable inference that the standard of proof required by the "gang-transfer" provision parallel that in other transfer proceedings.

Even accepting that the standard is reasonable doubt, such proof of the requirements for transfer under the "gang-transfer" provision does not convert the proceeding into an adjudication. The purpose of an adjudicatory proceeding is to determine whether a minor has committed acts which violate criminal law. As defined by the

Act, the proceeding is a hearing to determine whether the allegations of a petition that a minor is a delinquent are proved beyond a reasonable doubt. (Ill. Rev. Stat. 1989, ch. 37, par. 801—3(1).) Under the "gang-transfer" provision, unlike an adjudicatory hearing, there is no requirement that the State present evidence of the minor's delinquency.

Moreover, even if by necessity the "gang-transfer" provision requires some quantum of proof that the minor charged committed the offense, protections against double jeopardy are not necessarily triggered. In so concluding, we take cognizance of the fact that the Supreme Court, in *Breed*, stated that by its holding the States were not precluded from requiring, as a prerequisite to the transfer of a juvenile, substantial evidence that the minor committed the offense charged, *so long as the showing required is not made in an adjudicatory proceeding. Breed*, 421 U.S. at 538 n.18, 44 L. Ed. 2d at 360 n.18, 95 S. Ct. at 1790 n.18.

Defendant next erroneously concludes that since gang transfer "involves proof beyond a reasonable doubt of all the facts necessary for a finding of delinquency," it is more like an adjudicatory than a dispositional hearing.

Initially we note that defendant misstates the requirements of the "gang-transfer" provision. There is no requirement of proof of facts necessary for a finding of delinquency. The Act defines a delinquent minor as one who "prior to his 17th birthday has violated or attempted to violate, *** any federal or state law or municipal ordinance." (Ill. Rev. Stat. 1989, ch. 37, par. 805—3.) Proof of violation of the law requires proof of the elements of the charged offense. Contrarily, proof that a minor qualifies for transfer pursuant to the "gang-transfer" provision merely requires establishment of the two noninculpatory statutory factors.

As further support for his contention defendant invites our attention to *People v. Taylor* (1979), 76 Ill. 2d 289. In *Taylor* the defendant argued that the transfer statute denied him due process because it failed to prescribe a standard of proof. The defendant urged this court to require the State to prove by "clear and convincing evidence" that his transfer would be in the best interest of the minor and the public. In *Taylor* this court rejected the defendant's argument.

In its analysis the *Taylor* court stated that the greater the evidence of guilt required to be submitted by the State, the greater the likelihood of double jeopardy problems with the subsequent trial. (*Taylor*, 76 Ill. 2d at 304.) Further, the court stated that the "end result of excluding hearsay and placing a burden of clear and convincing evidence on the State would be to make the proceedings more formal and adversarial, thus increasing the expense, delay, strain and embarrassment that are the warning signs of double jeopardy problems." *Taylor*, 76 Ill. 2d at 307.

Defendant's apparent reliance on this language in *Taylor* is misplaced. In reaching its holding the court in *Taylor* also stated that the "salient feature of the transfer hearing [was] that it [was] not adjudicatory." (*Taylor*, 76 Ill. 2d at 302.) Therefore, the court held that the transfer hearing should not be governed by the rules of procedure and evidence applicable at either a criminal trial or at a juvenile court delinquency hearing. The court noted that the Uniform Juvenile Court Act suggests only a probable cause standard of proof. (*Taylor*, 76 Ill. 2d at 302-04.) As stated in *Taylor*, "[r]egardless of the importance of such a [transfer] hearing to the juvenile, it does not determine guilt or innocence." *Taylor*, 76 Ill. 2d at 302.

Finally, based on the premise that the "gang-transfer" hearing is adjudicatory, defendant argues that the

transfer provision violates double jeopardy under *Breed*. In *Breed*, the minor was adjudicated a delinquent for having committed acts, which if committed by an adult, would constitute the crime of robbery. Upon a subsequent finding that the minor was unfit for treatment as a juvenile, the juvenile court ordered that he be prosecuted for the same conduct under the criminal laws. The Supreme Court concluded that the minor was put in jeopardy at the adjudicatory hearing. The holding of *Breed*, distilled to its simplest form, is that transfer hearings must be held prior to an adjudication of delinquency.

In *Breed*, the minor was first adjudicated delinquent, then transferred for purposes of criminal prosecution. Here, the transfer proceedings precede adjudication. Our conclusion that the "gang-transfer" hearing is not an adjudication of guilt or innocence renders *Breed* inapposite.

We agree with the State that the transfer hearing most resembles a preliminary hearing. The scope and purpose of preliminary proceedings are in general to ascertain whether a crime charged has been committed and, if so, whether there is probable cause to believe that the crime was committed by the accused. (*People v. Bonner* (1967), 37 Ill. 2d 553, 557.) "Proceedings preliminary to trial do not constitute jeopardy." *People v. Shields* (1979), 76 Ill. 2d 543, 547; see *People v. DePoy* (1968), 40 Ill. 2d 433; *People v. Wilson* (1972), 7 Ill. App. 3d 158.

In sum, we conclude that the "gang-transfer" provision is not an adjudicatory hearing. Pursuant to the "gang-transfer" provision, the juvenile court judge must determine the truth of two allegations: (1) whether the minor has had prior delinquency adjudications, and (2) whether the charged offense was committed in furtherance of criminal gang activity. A finding as to the truth-

fulness of these allegations is not dispositive of the minor's innocence or guilt of the charged offense.

Contrary to the State's burden at adjudication or trial, at the transfer hearing, the State is not required to prove culpability and the court is not required to enter judgment. The transfer provision seeks only a determination of the appropriate law to be applied. Since the transfer proceeding does not seek to adjudicate guilt or innocence for the charged offense, there is no threat to defendant of being twice placed in jeopardy.

## EQUAL PROTECTION

Determination of whether a legislative classification is violative of equal protection requires that we employ a two-step analysis. (*People v. Esposito* (1988), 121 Ill. 2d 491, 499.) Initially, we must determine the proper level of scrutiny to be applied to the challenged classification. Where, as here, the classification does not affect a fundamental right (see *People v. J.S.* (1984), 103 Ill. 2d 395, 402-04 (rational basis test applied to provision creating exception to juvenile court jurisdiction); *People v. M.A.* (1988), 124 Ill. 2d 135, 141-44 (denial of treatment under the Juvenile Court Act analyzed under rational basis test)), or discriminate against a suspect class (*People v. M.A.* (1988), 124 Ill. 2d 135, 140), the standard for judging the statute is the relatively relaxed rational basis standard. *Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 371.

The rational basis standard requires only that the classification reasonably further a legitimate governmental interest. Under that standard, a challenged classification may be invalidated only if it is arbitrary or bears no reasonable relationship to the pursuit of a legitimate State goal. *Harris*, 111 Ill. 2d at 371.

Defendant advances a singular argument to support his claim that the "gang-transfer" provision violates the

equal protection guarantee. He asserts that the provision arbitrarily and capriciously punishes some more harshly than others who are guilty of the same or more serious offense. Specifically, defendant argues that when a minor is excluded from the juvenile court under the "automatic exclusion" provisions (Ill. Rev. Stat. 1989, ch. 37, pars. 805—4(6)(a), (7)(a)), but is later convicted only of an offense not covered by the exclusion provision, the court must proceed with disposition under the Juvenile Court Act (Ill. Rev. Stat. 1989, ch. 37, pars. 805—4(6)(c), (7)(c)). However, the "gang-transfer" provision contains no similar "transfer back" provision.

A minor transferred pursuant to the "gang-transfer" provision, if convicted of a lesser offense, is nevertheless sentenced under the criminal code. As a result, when two minors of the same age, with the same criminal background, are convicted of the same forcible felony "in furtherance of criminal activity by an organized gang," one "must" receive disposition under the Act while the other "must" be sentenced in criminal court. Defendant, citing *People v. DeJesus* (1989), 127 Ill. 2d 486, claims this result, even if the defendant was previously found delinquent for a felony and was proved to have committed the charged offense "in furtherance of criminal activity by an organized gang." This, he maintains, is disparate treatment of similarly situated people.

Defendant's argument is fatally flawed. Initially, we note that the *DeJesus* opinion does not contain facts that the defendant had a prior delinquency conviction or that she had gang affiliations. Thus, we fail to see the relevance of *DeJesus* to defendant's argument. Even assuming that defendant here is privy to facts about the defendant DeJesus which place *DeJesus* squarely within the facts of the present case, *DeJesus* is nevertheless unavailing.

The defendant DeJesus was charged pursuant to the Act as it existed in 1987. The "gang-transfer" provision, which became effective January 1, 1990 (Pub. Act 86—863, eff. Jan. 1, 1990 (amending Ill. Rev. Stat. 1989, ch. 37, par. 805—4)), was obviously not available to prosecutors at that time.

Further, the "gang-transfer" provision applies to minors with a prior adjudication of delinquency for the commission of a felony *and* who are subsequently charged with the commission of a felony which was committed in furtherance of gang activity. Contrarily, the "automatic-transfer" section makes no provision for repeat offenders with gang affiliations. The two provisions provide different procedures for qualitatively different types of offenders. Equal protection is not offended when dissimilar groups are treated differently. *Esposito*, 121 Ill. 2d at 500-01.

However, even broadly concluding that the two groups of offenders, because of their tender age, are alike, we find no equal protection violation. As we have stated, equal protection does not preclude different treatment for like persons where there is a rational basis for so doing. (*People v. Tosch* (1986), 114 Ill. 2d 474, 481.) We believe that that standard is met here.

It is not, nor could it reasonably be, contended that the State does not have a legitimate interest in curtailing crime and in promoting the safety and welfare of its citizenry. One need only to pick up a local daily newspaper or tune into the televised news broadcasts to learn of the appalling increase in the rate of violent crime in our society. All too often, at the root of tragedy and victimization is the minor gang member. The "gang-transfer" provision is the legislature's response to this growing epidemic. Clearly, the provision, by increasing the likelihood of criminal prosecution and sentencing, is aimed at decreasing the level of gang violence in our so-

ciety. Thus we find that the provision is reasonably related to a legitimate governmental interest.

Having so determined, we note further that uneven effects upon a particular group within the class are ordinarily of no constitutional concern. Thus, even though, unlike minors subject to the "gang-transfer" provision, some minors who are tried pursuant to the criminal laws may ultimately receive dispositions under the Act, there is no equal protection violation. "[A] classification which has some reasonable basis is not unconstitutional because it is not made with mathematical nicety or because in practice it results in some inequality." *City of Chicago v. Vokes* (1963), 28 Ill. 2d 475, 480; *Thillens, Inc. v. Morey* (1957), 11 Ill. 2d 579, 594, quoting *Lindsley v. Natural Carbonic Gas Co.* (1910), 220 U.S. 61, 55 L. Ed. 369, 31 S. Ct. 337.

Additionally, we point out that the minor defendant, upon transfer pursuant to the provision in question, who is found culpable for a lesser offense has already had a prior felony adjudication, and quite possibly already has once been afforded disposition under the Act. The legislature might well have determined that repeat felony offenders who commit crimes in furtherance of gang activity are not further amenable to the rehabilitative opportunities afforded under the Act. It may then also reasonably have concluded that to have disposition applied to this minor pursuant to procedures set forth in the Act would not serve the purposes of the Act. We find no violation of equal protection.

## SUBSTANTIVE DUE PROCESS

Defendant next contends that the "gang-transfer" provision violates substantive due process. He summarily concludes that the provision is not reasonably designed to deal with the problem of gang-related criminal activity by juveniles.

"Under substantive due process [citations], a statute is unconstitutional if it impermissibly restricts a person's life, liberty or property interest." (*People v. R.G.* (1989), 131 Ill. 2d 328, 342, citing *Kelley v. Johnson* (1976), 425 U.S. 238, 244, 47 L. Ed. 2d 708, 713, 96 S. Ct. 1440, 1444.) Since a transfer from juvenile to criminal court creates the possibility that the minor will be deprived of liberty for a longer period of time and under more punitive conditions, transfer must comport with due process. *People v. M.A.* (1988), 124 Ill. 2d 135, 144, citing *In re Gault* (1967), 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428.

Under the State's police power, the legislature has discretion to prescribe penalties for defined offenses. (*People v. Bradley* (1980), 79 Ill. 2d 410, 417.) However, that power is tempered by constitutional limitations which prohibit deprivation of liberty without due process of law. (*Bradley*, 79 Ill. 2d at 417.) The proper test in determining whether the legislature has properly exercised its power is whether the statute is reasonably designed to alleviate the evils which the legislature has determined to be a threat to the public health, safety and general welfare. *M.A.*, 124 Ill. 2d at 144-45; *Heimgaertner v. Benjamin Electric Manufacturing Co.* (1955), 6 Ill. 2d 152, 159.

Defendant advances no arguments in support of his due process contention; thus he has failed to meet his burden. That notwithstanding, we believe that the provision is reasonably designed to curtail gang activity. The legislature apparently determined that by removing prior-convicted youthful felons with gang affiliations from the shelter of the juvenile court system, it could deter the commission of gang-related felonies. Whether it is the most effective means is not relevant; the provision appears to us to have validity and we decline any invitation to second-guess the legislature.

## VAGUENESS

*Amici* assert that the definition of "organized gang," as it relates to the "gang-transfer" provision (Ill. Rev. Stat. 1989, ch. 37, par. 805—4(3.2)), is unconstitutionally vague.

We note that neither the State, nor defendant, whose position *amici* support, has raised this issue. An *amicus curiae* is not a party to the action but is, instead, a "friend" of the court. As such, the sole function of an *amicus* is to advise or to make suggestions to the court. *Zurich Insurance Co. v. Raymark Industries, Inc.* (1987), 118 Ill. 2d 23, 59.

An *amicus* takes the case as he finds it, with the issues framed by the parties. (3A C.J.S. *Amicus Curiae* §7; *Dunkelbarger Construction Co. v. Watts* (Ind. App. 1986), 488 N.E.2d 355, 360; *City of Minneapolis v. Church Universal & Triumphant* (Minn. 1983), 339 N.W.2d 880, 882 n.3.) He is not a party to the action (*Zurich*, 118 Ill. 2d at 59-60), and arguments made by him, but not espoused by the parties, have no binding effect on the parties (*Gardner v. City of San Jose* (1967), 248 Cal. App. 2d 798, 807, 57 Cal. Rptr. 176, 182). Therefore, we need not pass on grounds of invalidity urged solely by an *amicus*. (*Coburn v. Seda* (1984), 101 Wash. 2d 270, 279, 677 P.2d 173, 178.) Based upon these principles, we decline to consider the issue of vagueness.

## PROCEDURAL DUE PROCESS

Finally, *amici* argue that the "gang-transfer" provision is violative of procedural due process. They maintain that since the provision here requires no consideration of any of the factors as set out in *Kent v. United States* (1966), 383 U.S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045, and codified in section 5—4(3)(b) of the Act (Ill.

Rev. Stat. 1989, ch. 37, par. 805—4(3)(b)), the statute violates procedural due process.

Neither of the parties makes this contention and we, therefore, need not address it. However, given the trial court's determination that the "gang-transfer" provision contradicted the "discretionary-transfer" provision and its recitation of the factors to be considered under the discretionary provision, we perceive a question concerning procedural due process. Thus, we will consider it.

Procedural due process concerns the specific procedures employed in the statute. (*Kelley v. Johnson* (1976), 425 U.S. 238, 244, 47 L. Ed. 2d 708, 713, 96 S. Ct. 1440, 1444; *People v. R.G.* (1989), 131 Ill. 2d 328, 342.) Its fundamental requirement is the opportunity to be heard at " 'a meaningful time and in a meaningful manner.' " (*R.G.*, 131 Ill. 2d at 353-54, quoting *Mathews v. Eldridge* (1976), 424 U.S. 319, 333, 47 L. Ed. 2d 18, 32, 96 S. Ct. 893, 902.) The concept of due process is "flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334, 47 L. Ed. 2d at 33, 96 S. Ct. at 902.

In *Kent*, the Supreme Court determined that since the District of Columbia juvenile court transfer statute failed to set out specific standards to govern the juvenile court's determination to transfer a minor to the criminal court, there could be a variety of factors which might be considered, and disparity in the weight accorded those factors. As a result, there could likely be a disparity of treatment of minors. Therefore, the Court concluded, procedural due process would require that a juvenile be accorded a hearing before waiver could be determined. (*Kent*, 383 U.S. at 561, 16 L. Ed. 2d at 97, 86 S. Ct. at 1057.) Further, the Supreme Court formulated certain criteria to aid the juvenile court in its decisionmaking process. *Kent*, 383 U.S. at 566-67, 16 L. Ed. 2d at 100-01, 86 S. Ct. at 1060.

The apparent concern in *Kent* was potential disparity of treatment due to an absence of criteria to guide the court in the exercise of its discretion. Here, the potential for disparate treatment under the "gang-transfer" provision is absent. The criteria for transfer are expressly stated and allow a minor defendant the opportunity to be heard. Once the statutory criteria are satisfied, the juvenile court is without discretion; it must transfer the minor. All 15-year-olds who fall within the purview of the "gang-transfer" provision are to be prosecuted under the criminal laws. We conclude, therefore, that *Kent* is not dispositive. See *People v. J.S.* (1984), 103 Ill. 2d 395.

Further, we do not believe that the "gang-transfer" provision creates any conflict with the "discretionary-transfer" provision. The "gang-transfer" provision is merely another basis upon which a youthful offender can be excluded from the protections afforded under the juvenile court system. We perceive no risk of an erroneous deprivation of defendant's interest in avoiding prosecution as an adult through the use of this procedure. (*Mathews*, 424 U.S. at 335, 47 L. Ed. 2d at 33, 96 S. Ct. at 903.) Therefore, we hold that the "gang-transfer" provision does not offend procedural due process.

## CONCLUSION

The Juvenile Court Act seeks to protect the minor offender from the negative spiraling-down effects of criminal conduct, thereby benefiting the child and society. It was not designed to protect the minor who, secure in the knowledge of possible avoidance of criminal prosecution, contents himself to engage in a lifestyle of deviant behavior. Rather, the Act was intended to protect that child, who without thought of consequence for his conduct, violates the law. Those goals are not compromised by enactment of the "gang-transfer" provision.

For the reasons stated, we conclude that defendant has failed to satisfy his burden of establishing the invalidity of the "gang-transfer" provision. Accordingly, the judgment of the circuit court of Cook County is reversed, and the cause remanded for proceedings consistent with this opinion.

*Reversed and remanded.*

CHIEF JUSTICE MILLER, specially concurring:

I concur in the result reached by the court in this appeal, but write separately because the majority opinion leaves open the question of what standard of proof applies in transfer determinations under the "gang-transfer" statute. Unlike the majority, I would decide the question at this time and determine that probable cause is the correct standard.

The question should be decided now for two reasons. First, as the majority notes (145 Ill. 2d at 235), *Kent v. United States* (1966), 838 U.S. 541, holds that standards in juvenile transfer statutes must be clear in order to comport with the requirements of due process. While *Kent* is mainly concerned with the factual criteria for transfer and the "gang-transfer" criteria are already clear, it would obviously aid in the consistent application of those criteria for this court to specify what standard of proof applies in such proceedings. Second, it would be helpful to provide guidance to the juvenile courts and would avoid further questions on the issue in the future.

The majority opinion does not clearly indicate what standard of proof applies in "gang-transfer" proceedings. Nevertheless, the majority properly rejects the defendant's assertion that a reasonable doubt standard applies. (145 Ill. 2d at 225.) The opinion further states that it is "a more reasonable inference that the standard of proof required by the 'gang-transfer' provision parallel[s] that in other transfer proceedings." (145 Ill. 2d at

225.) I agree. The same purposes and procedures that apply to a discretionary transfer proceeding apply to a "gang-transfer" proceeding. The only difference is the criteria applied. I see no language in the "gang-transfer" statute to indicate a different standard of proof and thus I see no reason why the same standard of proof should not apply to both proceedings.

In *People v. Taylor* (1979), 76 Ill. 2d 289, this court examined the constitutionality of the discretionary transfer statute. The court held there that "the State need only present evidence sufficient to persuade the trial court, in the sound exercise of its discretion, that in light of the statutorily prescribed criteria transfer is warranted." (76 Ill. 2d at 303-04. See also *People v. D.B.* (1990), 202 Ill. App. 3d 194, 201; *People v. Cater* (1979), 78 Ill. App. 3d 983, 987; *People v. Stocks* (1981), 93 Ill. App. 3d 439, 445 (clear and convincing standard does not apply).) While *Taylor* does not explicitly hold that probable cause is the applicable standard of proof in discretionary transfer proceedings, *Taylor* does imply that probable cause is the correct standard. In *Taylor* the court rejected a clear and convincing standard (*Taylor*, 76 Ill. 2d at 302), and stated that "the greater the evidence of guilt required to be submitted by the State, the greater the likelihood of double jeopardy problems with the subsequent trial." (*Taylor*, 76 Ill. 2d at 304.) More importantly, as the majority notes (145 Ill. 2d at 227), the court in *Taylor* also observed that the Uniform Juvenile Court Act "suggests only a probable cause standard." (*Taylor*, 76 Ill. 2d at 304.) Taken together, I believe *Taylor* and the majority opinion imply that probable cause is the correct standard for both discretionary transfer and "gang-transfer" proceedings.

Two other reasons support my conclusion that probable cause is the proper standard. First, one of the criteria for transfer under the discretionary transfer statute

is "whether there is sufficient evidence upon which a grand jury may be expected to return an indictment." (Ill. Rev. Stat. 1989, ch. 37, par. 805—4(3)(b)(1).) Because the standard of proof in grand jury proceedings is probable cause (see *Phillips v. Graham* (1981), 86 Ill. 2d 274, 284), the statute suggests that the General Assembly contemplated a probable cause standard in discretionary transfer proceedings. Second, the majority concludes that transfer proceedings are not adjudicatory, but instead are highly analogous to preliminary hearings where the probable cause standard is applied. (145 Ill. 2d at 228, citing *People v. Bonner* (1967), 37 Ill. 2d 553, 557.) I agree with that analogy. Transfer proceedings and preliminary hearings are both pretrial proceedings which have as their purpose the determination of whether the State may proceed with criminal charges. I believe it appropriate to apply the same standard of proof in both cases.

In order to clarify the procedures to be used in "gang-transfer" proceedings, I believe that we should decide here that probable cause is the applicable standard of proof in these proceedings. The majority opinion is not inconsistent with this conclusion.

JUSTICE CUNNINGHAM joins in this special concurrence.