# Illinois Official Reports

## Appellate Court

---

### *In re C.C.*, 2015 IL App (1st) 142306

---

| | |
|---|---|
| Appellate Court Caption | *In re* C.C., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. C.C., a Minor, Respondent-Appellant). |
| District & No. | First District, Fourth Division<br>Docket No. 1-14-2306 |
| Filed | January 6, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where respondent, a 14-year-old minor who was convicted of first-degree murder in the shooting death of another minor was sentenced to imprisonment in the Department of Juvenile Justice until his twenty-first birthday and he also was given a mandatory minimum 45-year adult criminal sentence, which was stayed under the extended jurisdiction juvenile statute and will be vacated if he completes his juvenile sentence without any new offenses or violations of the juvenile sentence, the appellate court held that since the stay on respondent's adult criminal sentence has not been revoked, the State has not sought its revocation and the sentence may never be imposed, respondent lacks standing to challenge the severity of that sentence at this time and the judgment of the trial court was affirmed. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-JD-3853; the Hon. Lori Wolfson, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Heidi Linn Lambros, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Kathleen Warnick, and Adam Meczyk, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE ELLIS delivered the judgment of the court, with opinion. Justices Howse and Epstein concurred in the judgment and opinion.

**OPINION**

¶ 1 Respondent C.C. was convicted of first-degree murder for the shooting death of 17-year-old Dejuan Jackson. Respondent was 14 years old at the time of the shooting. He was sentenced to imprisonment in the Department of Juvenile Justice until his twenty-first birthday and also given a mandatory minimum 45-year adult criminal sentence. Under the extended jurisdiction juvenile (EJJ) statute, the adult portion of his sentence is stayed, and if respondent completes his juvenile sentence without committing a new offense or violating the conditions of his juvenile sentence, that adult sentence will be vacated on completion of that juvenile sentence. 705 ILCS 405/5-810(6), (7) (West 2012).

¶ 2 Respondent appeals, arguing that his 45-year mandatory minimum adult-stayed sentence violates both the eighth amendment of the United States Constitution and the proportional penalties clause of the Illinois Constitution.

¶ 3 The preliminary and ultimately dispositive issue in this case is whether a minor-respondent sentenced under the EJJ statute, who receives a juvenile sentence plus a stayed adult criminal sentence, has standing to challenge the severity of his adult sentence when it has not yet been imposed and when the State has not petitioned for its imposition. On at least two occasions, this court has expressed doubts about a minor-respondent's standing in this context, but in neither of those cases was the standing issue raised by the State. In this case, the State has challenged respondent's standing to assert his constitutional claims, presenting the issue squarely for our review.

¶ 4 We hold that, because the stay on respondent's adult criminal sentence has not been revoked, the State has not sought its revocation, and the sentence may never be imposed, respondent lacks standing to challenge the severity of his sentence at this time. We therefore affirm the judgment below.

¶ 5                    I. BACKGROUND

¶ 6 Respondent was charged with the first-degree murder of Jackson and the attempted first-degree murders of Robert Thompson and Andre Cribbs. On July 17, 2013, the trial court granted the State's motion to designate respondent's case as an EJJ prosecution under section

- 2 -

5-810 of the Juvenile Court Act of 1987 (705 ILCS 405/5-810 (West 2012)). On March 20, 2014, the State filed a notice of intent to seek an extended-term sentence under section 5-8-1(a)(1)(d)(iii) of the Unified Code of Corrections (730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2012)), which provides for a sentencing enhancement of 25 years to natural life imprisonment for a defendant who discharged a firearm that caused death to another person.

¶ 7 The case proceeded to a jury trial. Since respondent is not raising any substantive challenges related to his proceedings, we will briefly summarize the facts adduced at trial. Thompson and Cribbs both testified for the State. They testified that, on September 26, 2012, they were walking to their friend Willie's house with Jackson. A black sport utility vehicle (SUV) approached them, and they saw respondent leaning out the passenger's side window with a revolver. Respondent fired several shots and Thompson and Cribbs ran. When they returned to the scene, they saw Jackson lying in a pool of blood. Jackson died from a gunshot wound to the back of his head. Both Thompson and Cribbs identified respondent as the shooter in a police lineup.

¶ 8 Respondent was acquitted of both counts of attempted murder but found guilty of the first-degree murder of Jackson. The trial court sentenced respondent to imprisonment in the Department of Juvenile Justice until his twenty-first birthday. Additionally, the trial court imposed an adult-stayed sentence of 45 years' imprisonment in the Illinois Department of Corrections, the mandatory minimum for first-degree murder with a firearm. 730 ILCS 5/5-4.5-20(a), 5-8-1(a)(1)(d)(iii) (West 2012).

¶ 9                                                    II. ANALYSIS

¶ 10 On appeal, respondent raises no challenge to his conviction, but he contends that his adult criminal sentence is unconstitutional. Specifically, he argues that the mandatory minimum adult-stayed sentence of 45 years violates both the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution. He asks this court to vacate that sentence and remand for a new sentencing hearing at which the juvenile court may impose a stayed sentence below the mandatory minimum.

¶ 11 Here, as noted earlier, respondent's case was designated as an EJJ prosecution under section 5-810 of the Juvenile Court Act of 1987 (705 ILCS 405/5-810 (West 2012)). The EJJ statute provides that, upon a finding of guilt in an EJJ case, the trial court must impose a juvenile sentence under the Juvenile Court Act as well as a conditional adult criminal sentence. 705 ILCS 405/5-810(4) (West 2012). If the juvenile successfully completes his juvenile sentence, then the adult criminal sentence is vacated. 705 ILCS 405/5-810(7) (West 2012). The statute provides two scenarios in which the stay on the adult sentence may be revoked, and the adult criminal sentence imposed, during the pendency of the juvenile sentence: first, if the juvenile commits a new offense, the stay "shall" be revoked; and second, if the juvenile violates the conditions of his juvenile sentence in some way other than by committing a new offense, the court may, in its discretion, revoke the stay. 705 ILCS 405/5-810(6) (West 2012).

¶ 12 Respondent's adult criminal sentence is currently stayed. The State has not petitioned to revoke his stay for committing a new offense, and respondent has not been accused of violating the conditions of his juvenile sentence, which would subject him to discretionary

revocation. The State argues that, under these facts, respondent lacks standing to challenge the constitutionality of his adult sentence. Unless and until the stay on that sentence is revoked, the State claims, respondent has not suffered a sufficient injury to confer standing.

¶ 13    The doctrine of standing precludes courts from ruling upon mere abstract propositions of law, rendering advisory opinions, or giving legal advice as to future events. *Underground Contractors Ass'n v. City of Chicago*, 66 Ill. 2d 371, 375 (1977). "A party may question the constitutional validity of a statutory provision only if he or she has sustained or is in immediate danger of sustaining some direct injury as a result of enforcement of the statute." *People v. Esposito*, 121 Ill. 2d 491, 512 (1988).

¶ 14    We first note that, in two decisions where the State did not challenge defendant's standing, this court has questioned minor-respondents' standing to challenge the length of their stayed adult sentences before those sentences are imposed. *E.g.*, *In re Vincent K.*, 2013 IL App (1st) 112915, ¶ 43 (questioning the minor's standing to challenge his stayed adult sentence because "respondent has not violated the provisions of his juvenile sentence and, accordingly, his adult sentence has not kicked in"); *In re Phillip C.*, 364 Ill. App. 3d 822, 832 (2006) (though State failed to object to defendant's standing, questioning the minor's standing to challenge his stayed adult sentence because he "ha[d] it within his own power to determine whether the adult sentence will kick in"). Because the State failed to raise the issue in those cases, however, this court did not decide the standing question. In this case, the State has challenged respondent's standing.

¶ 15    We agree with the State that respondent lacks standing to challenge the constitutionality of this adult criminal sentence at this juncture. Respondent has not committed a new offense that would trigger the imposition of his adult offense and, of course, may never do so. Likewise, he may never violate the terms of his juvenile sentence–and even if he does, the trial court may decide, in its discretion, not to order the execution of that adult sentence. 705 ILCS 405/5-810(6) (West 2012). Thus, there is at least one, if not two, intervening events that must occur before this 45-year sentence will kick in–that is, before defendant will suffer any direct injury. The record before us reveals that none of these events have transpired, nor are they about to transpire.

¶ 16    In *In re M.I.*, 2013 IL 113776, the Illinois Supreme Court held that the respondent lacked standing to assert a due process challenge to the revocation provision of the EJJ statute after the State, alleging that the respondent had committed a new offense, petitioned the court to revoke the stay on his adult sentence. *Id.* ¶ 34. The supreme court held that the respondent lacked standing because the language that he challenged as vague pertained to revocations based, not on the commission of a new offense, but on violations of the conditions of his juvenile sentence. *Id.* ¶ 36. Because the language he challenged was not the basis for his possible revocation, he could show no injury caused by that language. *Id.*

¶ 17    Similarly, in *In re Omar M.*, 2014 IL App (1st) 100866-B, ¶ 1, the respondent alleged that the revocation provision of the EJJ statute was unconstitutionally vague. At the time, the State had not filed a petition to revoke the stay on respondent's adult sentence. *Id.* ¶ 10. Applying *M.I.*, the court stated that the "vague fear" of the imposition of an adult sentence under the EJJ statute was insufficient to confer standing. *Id.* ¶ 11.

¶ 18    Finally, in *In re J.W.*, 346 Ill. App. 3d 1, 3 (2004), the respondent was subjected to EJJ prosecution and given a stayed adult sentence. On appeal, the respondent claimed that the statutory provision providing for revocation of the stay on her adult sentence was unconstitutionally vague, even though her adult sentence had not been imposed. *Id.* at 14. The court found that the respondent lacked standing to challenge the revocation provision because her "claim [was] premature until a petition to revoke the stay [was] filed in accordance with the EJJ statute." *Id.* at 15.

¶ 19    Like *M.I.*, *Omar M.*, and *J.W.*, this case involves a challenge to a statute that has not yet affected respondent and may never affect him. The stay on respondent's adult sentence has not been revoked and he has not been required to serve his adult sentence. Like *Omar M.* and *J.W.*, the State in this case has not even filed a petition to revoke the stay on respondent's adult sentence. At this stage, respondent has not been directly or materially affected by the statute that provides for a mandatory minimum sentence of 45 years, and he is in no immediate danger of being affected by it. If a constitutional challenge to the procedure for revoking the stay is premature unless and until that procedure is instigated, it follows that the imposition of the adult-stayed sentence–which is one step further removed in time–is likewise premature.

¶ 20    Respondent claims that *Omar M.* and *J.W.* support his contention that he has standing in this case, because, while those cases found that respondents lacked standing to challenge the EJJ revocation procedure, those decisions did consider the respondents' challenges to their adult sentences based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Respondent misreads those cases. The *Apprendi* challenges in those cases did not concern the adult sentence imposed; respondents challenged the fact that their cases were designated as EJJ prosecutions, which they claimed subjected them to enhanced penalties based on facts that should have been tried before a jury under a reasonable-doubt standard. *In re J.W.*, 346 Ill. App. 3d at 10-11; *Omar M.*, 2014 IL App (1st) 100866-B, ¶¶ 18-21. It does not even appear that the State challenged the respondents' standing to raise those claims, nor did the court question it, and for good reason–the respondents clearly had standing to challenge the constitutionality of the proceedings in which they had been engaged at the time of their appeals. The *Apprendi* challenges were not directed at something that had not happened and might never happen–the revocation of the stay on the adult sentences or the sentences themselves–but rather at something that had *already* happened, the designation of their cases as EJJ prosecutions. There was nothing remote or speculative about *that* injury; the respondents had already suffered it.

¶ 21    For this same reason, respondent's reliance on *In re Matthew M.*, 335 Ill. App. 3d 276 (2002), is misplaced. See *id.* at 286-87 (respondent raised *Apprendi* challenges directed at EJJ designation, after respondent's case had been designated as an EJJ prosecution and respondent had been tried and convicted). *Matthew M.* is also distinguishable because it concerned ripeness, an admittedly related doctrine that often overlaps with standing (see *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252 (2010)), but a distinct doctrine nevertheless, and not one raised in this case by the State.

¶ 22    *People v. P.H.*, 145 Ill. 2d 209 (1991), cited by respondent, likewise does not support his position. In *P.H.*, the defendant was in the midst of a hearing in which the State sought to

transfer him to adult criminal court. *Id.* at 217. Part of the defendant's argument at the transfer hearing was that the adult-transfer provision, itself, was unconstitutional. *Id.* The defendant unquestionably had standing to challenge that provision, as he was in immediate danger of being injured–the injury there being a transfer to adult court, which the State sought both below and on appeal. *Id.* at 220.

In contrast, in this case, the injury respondent asserts is a cruel and unusual sentence–but he is not serving that sentence, nor is he in immediate danger of serving it. He very well might never serve it. His asserted injury, at this stage, is too remote to confer standing.

By no means should our opinion be construed as limiting respondent's ability to challenge his adult sentence if he is required to serve it or if he is in imminent danger of serving it. We express no opinion on respondent's standing should those circumstances arise. We simply hold that, because the stay on his adult sentence has not been revoked and it is currently in no jeopardy of being revoked, respondent lacks standing *at this time* to challenge the severity of his sentence. In light of our decision, we express no opinion on the merits of defendant's constitutional challenges to his adult sentence.

### III. CONCLUSION

For the foregoing reason, we affirm the judgment of the trial court.

Affirmed.